THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JENNY COCHRANE, dba LAW OFFICE OF
JENNY COCHRANE,

                    Plaintiff,

    v.

AMERICAN GUARANTEE & LIABILITY
INSURANCE COMPANY,

                    Defendant.

CASE NO. C19-1253-JCC

ORDER

This matter comes before the Court on Plaintiff's motion for partial summary judgment (Dkt. No. 18) and Defendant's motion for summary judgment (Dkt. No. 20). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES Plaintiff's motion for partial summary judgment and GRANTS Defendant's motion for summary judgment for the reasons explained herein.

I.    **BACKGROUND**

Plaintiff is a Washington-licensed lawyer. (Dkt. No. 1 at 2.) In March 2010, Plaintiff partnered with ARAG Insurance Company to provide legal services to ARAG's insureds. (*Id.* at 2–3.) Plaintiff ended her relationship with ARAG on March 22, 2013. (*Id.* at 3.)

From February 19, 2015, to February 19, 2016, Plaintiff was covered by a lawyers professional liability insurance policy issued by Defendant. (*See* Dkt. Nos. 19 at 2, 19-5 at 2.)

1    The policy stated that Defendant:

2        will pay on behalf of [Plaintiff], subject to the limit of liability, all amounts in
3        excess of the deductible shown in the Declarations that [Plaintiff] becomes legally
         obligated to pay as Damages and Claim Expenses because of a Claim that is both
4        made and reported to [Defendant] during the Policy Period . . . based on an act or
         omission in [Plaintiff's] rendering or failing to render Legal Services for others.
5
     (Dkt. No. 19-5 at 6.)[1] The policy also provided that Defendant "shall have the right and duty to
6
     defend any Claim based on an act or omission in [Plaintiff's] rendering or failing to render Legal
7
     Services for others, seeking Damages that are covered by this policy . . . even if any of the
8
     allegations of the Claim are groundless, false or fraudulent." (*Id.*)
9
             The policy defined "Claim" as "a demand for money or Legal Services." (*Id.* at 12.)
10
     "Claim Expenses" are defined in relevant part as "fees, costs and expenses charged by attorneys
11
     retained or approved by [Defendant]." (*Id.*) "Damages" were defined as "the monetary portion of
12
     a judgment, award or settlement, provided such settlement is negotiated with the assistance and
13
     approval of [Defendant]." (*Id.*) Damages excluded several items, including "legal fees, costs and
14
     expenses paid to or incurred or charged by [Plaintiff], no matter whether claimed as restitution of
15
     specific funds, forfeiture, financial loss, setoff or otherwise, and injuries that are a consequence
16
     of any of the foregoing." (*Id.*) The policy defined "Legal Services" as "those services performed
17
     by [Plaintiff] as a licensed lawyer in good standing . . . but only where the act or omission was in
18
     the rendition of services ordinarily performed as a lawyer." (*Id.* at 13.) And the policy defined
19
     "Notice" as Plaintiff providing Defendant with "the description of the alleged act or omission,"
20
     "the identities of the claimants or potential claimants," "the identities of [Plaintiff]," and "the
21
     date and circumstances by which [Plaintiff] first became aware of the act or omission." (*Id.*)
22
             The policy included a Disciplinary Proceeding Endorsement. (*See id.* at 23–24.) The
23
     endorsement defined "Disciplinary Proceedings" as "a grievance or allegation involving an act or
24
     omission made against [Plaintiff] to any professional entity charged with the responsibility to
25

26
     ───────────────
     [1] Boldface contained in the policy has been omitted for purposes of this order.

1    oversee lawyer disciplinary matters." (*Id.* at 24.) The endorsement provided that Plaintiff "will

2    have the right and duty to defend the Disciplinary Proceeding; provided, however, that

3    [Defendant] will have the right to effectively associate in the defense and investigation of the

4    Disciplinary Proceeding and be kept fully apprised as to the status of the Disciplinary

5    Proceeding." (*Id.* at 23.) The endorsement afforded Plaintiff "the right and duty to select counsel

6    subject to [Defendant's] prior written consent." (*Id.*) The endorsement required Defendant to

7    indemnify Plaintiff "for any Damages incurred as a result of any Disciplinary Proceeding" but

8    not "for defense costs in which the final resolution of the Disciplinary Proceeding results in the

9    suspension or revocation of [Plaintiff's] license or right to practice law." (*Id.*)

10       The policy set a limit of liability of $100,000 per claim and an aggregate limit of liability

11   of $300,000. (*Id.* at 2.) The disciplinary proceedings endorsement provided that "[the] maximum

12   limit of liability of [Defendant] for defense costs in connection with Disciplinary Proceedings

13   will not exceed $10,000 in the aggregate regardless of how many Disciplinary Proceedings occur

14   during the Policy Period and regardless of any other fact, circumstance or situation." (*Id.* at 23–

15   24).

16       On January 24, 2015, "a disgruntled ex-boyfriend/former employee of" Plaintiff told

17   ARAG that Plaintiff had submitted fraudulent bills for legal services she had not provided. (*Id.*)

18   On April 20, 2015, following an investigation, ARAG filed a Washington State Bar Association

19   ("WSBA") grievance against Plaintiff. (*Id.*; *see* Dkt. No. 19-1 at 2–7.) The grievance stated that

20   "ARAG is a legal insurance company," that "[Plaintiff] is a former ARAG Network Attorney,"

21   and that there was no court case related to the grievance. (Dkt. No. 19-1 at 3.) In support of

22   ARAG's grievance, Ann Cosimano, ARAG's general counsel, stated that she had been "notified

23   of communications received from four plan members indicating that [Plaintiff] appears to have

24   submitted claims for payment of legal services she did not provide." (*Id.* at 6.) Cosimano

25   asserted that "ARAG's known losses are $1,545.00." (*Id.* at 7.)

26       On May 27, 2015, Plaintiff notified Defendant of ARAG's grievance. (Dkt. Nos. 21 at 2,

21-1 at 39–40.) On June 1, 2015, Defendant contacted Plaintiff and learned of the allegations underlying the grievance. (Dkt. No. 21-1 at 37.) Defendant notified Plaintiff that the disciplinary proceedings endorsement could apply to ARAG's grievance against her. (*Id.*) On June 8, 2015, Plaintiff's assistant sent Defendant a copy of the grievance and notified Defendant that Plaintiff had selected Christopher Howard of Schwabe, Williamson & Wyatt to represent her in those proceedings. (Dkt. Nos. 21 at 3; 21-1 at 42, 44–104.) On June 12, 2015, Defendant sent Plaintiff an email stating that "[a]ssuming your license is not revoked or suspended, [Defendant] will reimburse you for legal costs paid to your attorney up to $10,000 less half your deductible under your Policy ($1,250)." (Dkt. No. 21-1 at 112.) Defendant also sent Plaintiff a letter setting forth Defendant's analysis of the grievance, the relevant policy provisions, and Defendant's reservation of rights. (*Id.* at 106–10.)

On October 2, 2015, ARAG sent the WSBA a letter further detailing its allegations against Plaintiff. (*See* Dkt. Nos. 1 at 3, 19-2 at 2–17.) In its letter, ARAG asserted that based on complaints filed by ARAG's insureds, Plaintiff had violated "the ARAG Attorney Agreement and submittal of ARAG Claim Forms [and], we believe, the Rules of Professional [C]onduct governing attorneys practicing in the state of Washington." (Dkt. No. 19-2 at 2.) ARAG stated that "suspected violations of state Rules of Professional Conduct governing the conduct of attorneys are to be reported to the appropriate professional authority." (*Id.* at 3.) ARAG provided descriptions of its insureds' allegations against Plaintiff, some of which asserted that Plaintiff had committed malpractice. (*See id.* at 5–17.) From July 2015 to October 2015, Plaintiff asked Defendant for reimbursement of her defense costs pursuant to the disciplinary proceeding endorsement but was told that reimbursement would be made upon the final disposition of the disciplinary proceedings. (*See* Dkt. No. 21-1 at 114–18, 120–22, 124–28.)

On December 15, 2016, Plaintiff filed a lawsuit against ARAG in King County Superior Court, seeking a declaratory judgment and damages for ARAG's alleged breach of ARAG's attorney agreement, violation of Washington's Consumer Protection Act ("CPA"), Wash. Rev.

Code § 19.86 *et seq.*, defamation, and false light. (*See* Dkt. No. 1 at 4; *see generally* Dkt. No. 19-3.) In answering Plaintiff's complaint, ARAG raised several affirmative defenses including "Plaintiff breached the contract prior to ARAG terminating the contract" and "[t]o the extent the Plaintiff's claim was filed in response to a Bar grievance, ELC 2.12 precludes such a claim." (Dkt. No. 19-4 at 4–5.) Plaintiff did not notify Defendant of her suit against ARAG or of ARAG's affirmative defenses.

On February 9, 2017, the WSBA brought a formal complaint against Plaintiff. (*See* Dkt. No. 19 at 2.) In April 2018, Plaintiff reached confidential resolutions with the WSBA and ARAG. (*Id.*; *see* Dkt. No. 18 at 6–7.) Across the two proceedings, Plaintiff incurred $195,162.36 in attorney fees and $22,423.38 in costs. (*See* Dkt. No. 19 at 2–3.)

On February 22, 2018, Plaintiff notified Defendant that "after several years of litigation in the bar matter, the bar has agreed to its ultimate dismissal!" (Dkt. No. 21-1 at 143.) Plaintiff stated that final documents were being prepared and that she had "already spent approximately $80,000 in legal fees, and [owed] perhaps $80,000 more." (*Id.*) Plaintiff "wanted to also request reimbursement for as much as is possible under the policy." (*Id.*) In response, Defendant congratulated Plaintiff but noted that it was "only able to reimburse you $10,000, which [was] outlined in the coverage position letter [Defendant] sent [Plaintiff] on 6/12/2015." (*Id.* at 142.) Defendant also requested that Plaintiff send it a copy of the final disposition order, invoices, and payee information. (*See id.*) In response, on April 10, 2018, Plaintiff stated that she planned "to pursue reimbursement for my more than $150,000 I have paid or owe on this matter, which involved a number of separate claims with individual clients grouped together in one grievance, through my claims-based policy due to [Defendant's] duty to defend through legal representation." (*Id.* at 141.)

On April 28, 2019, Plaintiff provided Defendant with ARAG's October 2, 2015 grievance supplement. (*Id.* at 145, 154–69.) Plaintiff reiterated that she was requesting "coverage for the litigation involved due to my claims made policy and [Defendant's] duty to defend on

that basis when I tendered reimbursement of my defense," stating that ARAG's grievance "related to 86 client matters." (*Id.* at 145.) Plaintiff asserted that her "litigation costs exceed $150,000 to date, and the matter is now concluded and will be dismissed through a diversion process." (*Id.*)

On May 23, 2018, Defendant sent Plaintiff a letter that "acknowledge[d] that [Plaintiff was] claiming defense reimbursement in excess of $150,000 to defend the 86 client matters referenced in the disciplinary complaint" but "maintain[ed] its position that [Plaintiff was] only entitled to reimbursement of $10,000 pursuant to the Disciplinary Proceedings Endorsement." (*Id.* at 171.) Defendant's letter referenced its June 12, 2015 letter and the endorsement's language that "[t]he maximum limit of liability of [Defendant] for defense costs in connection with Disciplinary Proceedings will not exceed $10,000 in the aggregate regardless of how many Disciplinary Proceedings occur during the Policy Period and regardless of any other fact, circumstance or situation." (*Id.* at 172.)

On February 14, 2019, Plaintiff sent Defendant a letter asking Defendant "to reconsider its erroneous coverage positions and afford coverage for the full amount of [Plaintiff's] fees and costs of $217,585.75." (Dkt. No. 21-1 at 175.) For the first time, Plaintiff notified Defendant of her lawsuit against ARAG. (*Id.* at 177; Dkt. No. 20 at 6.) Plaintiff also stated that both proceedings had concluded and set forth her claimed legal fees and costs. (Dkt. No. 21-1 at 177–78.) On February 28, 2019, Defendant sent Plaintiff a letter stating that it "maintains its coverage position as outlined in its reservation of rights letters dated June 12, 2015, and May 23, 2018." (*Id.* at 189.) Defendant asked Plaintiff to notify it "if a civil lawsuit or counterclaim was filed against [Plaintiff], or there is any other correspondence or documentation that [Defendant] should consider in [its] evaluation of this coverage dispute." (*Id.*)

On March 5, 2019, Plaintiff sent Defendant a notice of violations of Washington's Insurance Fair Conduct Act ("IFCA") pursuant to Wash. Rev. Code § 48.30.015. (*See generally* Dkt. No. 19-10.) Defendant did not respond to the notice. (*See* Dkt. Nos. 1 at 11, 19 at 2.)

1      On August 9, 2019, Plaintiff filed her complaint in this matter, alleging breach of

2  contract, bad faith, breach of the covenant of good faith and fair dealing, coverage by estoppel,

3  violation of Wash. Admin. Code § 284-30 *et seq*., violation of the CPA, and violation of IFCA,

4  Wash. Rev. Code § 48.30 *et seq*. (Dkt. No. 1 at 11–16.) On November 25, 2019, as part of her

5  initial disclosures in this matter, Plaintiff provided Defendant with a letter to Plaintiff from the

6  WSBA dated June 17, 2019, which informed Plaintiff that the WSBA was dismissing the

7  grievance against her. (*See* Dkt. No. 22 at 1, 6.) Plaintiff now moves for partial summary

8  judgment, (Dkt. No. 18), and Defendant moves for summary judgment, (Dkt. No. 20).

## II.   DISCUSSION

### A.   Legal Standard

11      "The court shall grant summary judgment if the movant shows that there is no genuine

12  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

13  Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute

14  about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a

15  verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

16  In deciding whether there is a genuine dispute of material fact, the court must view the facts and

17  justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party.

18  *Id.* at 255. The court is therefore prohibited from weighing the evidence or resolving disputed

19  issues in the moving party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

20      "The moving party bears the initial burden of establishing the absence of a genuine issue

21  of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a moving party fails to

22  carry its initial burden of production, the nonmoving party has no obligation to produce anything,

23  even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*

24  *& Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But once the moving

25  party properly supports its motion, the nonmoving party "must come forward with 'specific facts

26  showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*

1    *Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). Ultimately, summary judgment

2    is appropriate against a party who "fails to make a showing sufficient to establish the existence

3    of an element essential to that party's case, and on which that party will bear the burden of proof

4    at trial." *Celotex*, 477 U.S. at 322.

5         **B.**    **Duty to Defend**

6         An insurer's "duty to defend arises when a complaint against the insured, construed

7    liberally, alleges facts which could, if proven, impose liability upon the insured within the

8    policy's coverage." *Nat'l Sur. Corp. v. Immunex Corp.*, 297 P.3d 688, 691 (Wash. 2013)

9    (internal quotations omitted); *see also Robbins v. Mason County Title Ins. Co.*, 462 P.3d 430,

10   435 (Wash. 2020) (quoting Black's Law dictionary 542 (11th ed. 2019)) (defining "'demand' as

11   '[t]he assertion of a legal or procedural right'"). "The party seeking to establish coverage bears

12   the initial burden of proving coverage under the policy has been triggered," while "[t]he insurer

13   bears the burden of establishing an exclusion to coverage." *Pleasant v. Regence BlueShield*, 325

14   P.3d 237, 243 (Wash. Ct. App. 2014) (citing *Diamaco, Inc. v. Aetna Cas. & Sur. Co.*, 983 P.2d

15   707, 709 (Wash. Ct. App. 1999)).

16        To determine whether a claim is covered under an insurance policy, an insurer must look

17   to the "eight cor[n]ers" of the policy and the complaint against the insured. *Xia v. ProBuilders*

18   *Specialty Ins. Co.*, 400 P.3d 1234, 1240 (Wash. 2017). If neither document raises an issue of fact

19   or law that could conceivably result in coverage, then the insurer need not defend. *Id.* But "if

20   there is any reasonable interpretation of the facts or law that could result in coverage, the insurer

21   must defend." *Am. Best Food, Inc. v. Alea London, Ltd.*, 229 F.3d 693, 696 (Wash. 2010). And if

22   the facts in the complaint are ambiguous, then the insurer must investigate facts outside of the

23   complaint to determine if the insured is conceivably covered. *See Woo v. Fireman's Fund Ins.*

24   *Co.*, 164 P.3d 454, 459 (Wash. 2007).

25         *1.   WSBA Disciplinary Proceedings*

26        Defendant moves for summary judgment on the issue that it had no duty to defend or

indemnify Plaintiff in the WSBA disciplinary proceedings. (*See* Dkt. No. 20 at 15–18.) Plaintiff also moves for summary judgment on this issue, arguing that Defendant had a duty to defend her in the WSBA disciplinary proceedings because ARAG's grievance sought qualifying damages under the policy and asserted a claim of legal malpractice against Plaintiff. (Dkt. No. 18 at 10–16; *see* Dkt. No. 29 at 10 & 10–11 n.3.)[2,3]

The Washington Supreme Court "is ultimately responsible for lawyer discipline in Washington State," *In re Disciplinary Proceedings Against Trejo*, 185 P.3d 1160, 1168 (Wash. 2008), but the WSBA's "Disciplinary Board is the only body to hear the full range of disciplinary matters and has a unique experience and perspective in the administration of sanctions," *In re Disciplinary Proceeding Against Anschell*, 9 P.3d 193, 199 (Wash. 2000) (internal quotations omitted). "The American Bar Association's *Standards for Imposing Lawyer Sanctions* . . . govern lawyer sanctions in Washington," *In re Disciplinary Proceeding Against Smith*, 246 P.3d 1224, 1231 (Wash. 2011) (internal quotations omitted), which provide for sanctions including disbarment, suspension, restitution, and "other requirements that the state's highest court or disciplinary board deems consistent with the purposes of lawyer sanctions," American Bar Association, *Standards for Imposing Lawyer Sanctions* std. 2.2–2.8 (1991 & Supp. 1992); *see also* Wash. Rules for Enforcement of Lawyer Conduct ("ELC") 13.1–13.9.

The Washington Supreme Court has distinguished between legal malpractice actions and lawyer disciplinary proceedings. The Washington Supreme Court has noted that "a lawyer may be disciplined even if the misconduct does not cause any damage," that "the prophylactic

---

[2] Plaintiff's briefing liberally uses italics for emphasis and boldface to mirror the text of the policy. Such stylistic flourishes are omitted from quotations for the purposes of this order.

[3] The Court notes that Plaintiff distinguishes between the grievance's purported status as a covered claim from the WSBA proceedings against Plaintiff. (*See* Dkt. No. 18 at 17) ("The acts and omissions that gave rise to the Disciplinary Proceeding in this case also resulted in a covered Claim—namely, ARAG's claims of legal malpractice."); (Dkt. No. 33 at 8) (clarifying that Plaintiff "is not arguing that a Disciplinary Proceeding is a Claim. What [Plaintiff] is arguing is that ARAG alleged a conceivably covered claim for legal malpractice in addition to initiating a disciplinary proceeding with the WSBA for violations of the RPC.").

1   purpose of the ethical rules may result in a sanction even if the conduct would not otherwise

2   constitute a civil wrong," and that "even if the injured party initiates a disciplinary complaint,

3   that individual is not a party to the proceeding." *Hizey v. Carpenter*, 830 P.2d 646, 652 (Wash.

4   1992) (quoting 1 R. Mallen & J. Smith, *Legal Malpractice* § 1.9, at 33 (3d ed. 1989)).

5   Accordingly, "most courts . . . hold violations of the [Code of Professional Responsibility] or

6   [Rules of Professional Conduct] do not give rise to an independent cause of action against the

7   attorney." *Id.* at 650 (collecting cases). And the Washington Supreme Court has rejected the

8   proposition "that violation of the [Code of Professional Responsibility] or [Rules of Professional

9   Conduct] may be used as evidence of malpractice." *Id.* at 651–54.

10      Here, Plaintiff's policy defined a claim as a "demand for money or Legal Services." (*See*

11   Dkt. No. 19-5 at 12.) ARAG's grievance against Plaintiff did not demand either. Rather, ARAG

12   was "ethically bound to report suspected fraudulent activities by attorneys who submit claims for

13   payment of legal fees," and the grievance fulfilled ARAG's obligation to notify the WSBA of

14   Plaintiff's alleged submission of fraudulent claim forms. (Dkt. No. 19-1 at 2.) As such, ARAG

15   filed its grievance to trigger disciplinary proceedings against Plaintiff, not to seek relief from her.

16   While ARAG's grievance mentioned that its "known losses are $1,545.00," neither the grievance

17   nor the accompanying affidavit requested a return of that sum. (*See generally id.*) And the

18   grievance did not purport to seek legal services, as defined by the policy, from Plaintiff. (*See*

19   *generally id.*; Dkt. No. 19-5 at 13.)

20      Further, ARAG's grievance did not seek qualifying damages from Plaintiff. The policy

21   defined damages as "the monetary portion of any judgment, award or settlement." (Dkt. No. 19-5

22   at 12.) The policy's definition of damages explicitly excluded "legal fees, costs and expenses

23   paid to or incurred or charged by [Plaintiff], no matter whether claimed as restitution of specific

24   funds, forfeiture, financial loss, setoff or otherwise, and injuries that are a consequence of any of

25   the foregoing." (*Id.*) The $1,545.00 discussed in ARAG's grievance represented legal fees paid

26   to Plaintiff to which she was allegedly not entitled and could have theoretically been awarded by

the WSBA to ARAG as restitution. *See Standards for Imposing Lawyer Sanctions* std. 2.8(a); ELC 13.1, 13.7; (Dkt. No. 19-1 at 7). But such restitution would fall squarely within the policy's exclusion of "legal fees, costs and expenses paid to . . . [Plaintiff] . . . claimed as restitution of specific funds . . . and injuries that are a consequence of any of the foregoing." (Dkt. No. 19-5 at 12.) Therefore, ARAG's grievance did not seek damages necessary to impose liability upon Plaintiff that would have triggered Defendant's duty to defend under the policy. *See E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.*, 726 P.2d 439, 443 (Wash. 1986).

In addition, despite Plaintiff's repeated assertions to the contrary, ARAG's filing of a grievance with the WSBA is not equivalent to making a claim of legal malpractice against Plaintiff. As discussed by the Washington Supreme Court, ethical violations "do not give rise to an independent cause of action against the attorney" and cannot "be used as evidence of malpractice." *See Hizey*, 830 P.2d at 650–54.[4] Thus, ARAG did not covert its grievance into a claim of legal malpractice by including its insureds' descriptions of Plaintiff's reportedly subpar legal services.[5] The language of the policy itself further supports this conclusion, as it

---

[4] The Washington Supreme Court also noted that a claim of legal malpractice requires the "existence of an attorney–client relationship which gives rise to a duty of care on the part of the attorney to the client." *Hizey*, 830 P.2d at 651. As noted in ARAG's grievance, ARAG was not Plaintiff's client; rather, "ARAG is a legal insurance company" and Plaintiff "is a former ARAG Network Attorney." (Dkt. No. 19-1 at 3.)

Plaintiff nonetheless argues that ARAG had a "contractual right" to bring a claim of legal malpractice because ARAG's attorney agreement obligated Plaintiff to indemnify ARAG for liability arising out of acts or omissions in her performance of legal services and that it was "conceivable" that ARAG was an intended beneficiary of Plaintiff's rendering of legal services to ARAG's insureds. (*See* Dkt. No. 29 at 4–5) (citing *Trask v. Butler*, 872 P.2d 1080, 1084 (Wash. 1994)). But ARAG's contractual right could not be triggered absent its liability arising from an insured's claim of legal malpractice against Plaintiff, and Plaintiff does not provide substantive argument establishing that ARAG was in fact an intended beneficiary of Plaintiff's rendering of legal services to ARAG's insureds. Nor does Plaintiff demonstrate how a theoretical right to bring a future legal malpractice claim converts a grievance based on alleged ethical violations into a legal malpractice action. *See supra* Section II.B.1.

[5] Plaintiff cites several cases in which an injured party contacted its insurer to assert a claim of legal malpractice or to tender the defense of a conceivably covered claim. (*See* Dkt. Nos. 18 at 14–15, 29 at 7–9) (citing *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 518–19

1    specifically contemplates a scenario where an underlying nucleus of facts gives rise to both a

2    disciplinary proceeding subject to the endorsement and a claim triggering Defendant's duty to

3    defend. (*See* Dkt. No. 19-5 at 23) ("Thus, if the act or omission that gave rise to the Disciplinary

4    Proceeding results in a Claim, [Plaintiff] will be obligated to pay the full deductible . . . .").

5        In sum, ARAG's grievance did not conceivably give rise to a claim of legal malpractice

6    against Plaintiff triggering Defendant's duty to defend Plaintiff under the policy. *See Xia*, 400

7    P.3d at 1240; (Dkt. No. 19-5 at 6). Rather, it commenced a disciplinary proceeding before the

8    WSBA for Plaintiff's alleged ethical violations. Therefore, the disciplinary proceeding against

9    Plaintiff fell well within, and is therefore subject to, the disciplinary proceeding endorsement in

10   Plaintiff's policy. (*See* Dkt. No. 19-5 at 12.) Under the endorsement, Plaintiff, not Defendant,

11   had "the right and duty to defend the Disciplinary Proceeding." (*Id.* at 23.) Because the relevant

12   endorsement in the policy delegated the duty to defend the WSBA disciplinary proceedings to

13   Plaintiff, Defendant did not breach any duty to defend Plaintiff in those proceedings. (*Id.* at 23.)

14   Accordingly, Defendant's motion for summary judgment is GRANTED and Plaintiff's motion

15   for partial summary judgment is DENIED on this ground.

16           *2.  Plaintiff's Suit Against ARAG*

17       Defendant moves for summary judgment on the issue that it did not have a duty to defend

18   or indemnify Plaintiff in her suit against ARAG. (Dkt. No. 20 at 18–20.)

19       In this case, the policy at issue obligated Defendant to defend Plaintiff against "any

20   Claim based on an act or omission in [Plaintiff's] rendering or failing to render Legal Services

21   for Others, seeking Damages that are covered by this policy." (Dkt. No. 19-5 at 6.) The policy

22   further defined "Claim" as "a demand for money or Legal Services." (*Id.*) Plaintiff's suit against

23
24   (3d. Cir. 2012); *Robbins v. Mason County Title Ins. Co.*, 425 P.3d 885, 893 (Wash. Ct. App.
     2018)). But this case is distinguishable from those cited by Plaintiff because it concerns a
25   grievance filed with a body governing lawyer ethical obligations, not a letter threatening legal
     action or asserting legal rights sent directly to a party. And as discussed above, ARAG's
26   grievance is equivalent to neither a claim of legal malpractice nor a claim demanding money or
     legal services, as defined by the relevant policy. *See supra* Section II.B.1.

1    ARAG does not fall within the scope of the policy's coverage of claims against Plaintiff seeking

2    damages for her rendering or failing to render legal services. Rather, Plaintiff sought declaratory

3    relief and various forms of damages from ARAG. (*See* Dkt. No. 19-3 at 8–13.) Thus, Plaintiff's

4    filing of her suit against ARAG did not trigger Defendant's duty to defend under the policy.[6]

5        Further, Plaintiff did not tender the defense of her suit to Defendant. In Washington, an

6    insurer's duty to defend accrues when a complaint against the insured alleges facts which, if

7    proven, could impose liability covered by the policy; however, the insured must still

8    "affirmatively inform the insurer that its participation is desired." *Unigard Ins. Co. v. Leven*, 983

9    P.2d 1155, 1160 (Wash. Ct. App. 1999), *as amended* (Apr. 24, 2000); *see Mut. of Enumclaw Ins.*

10   *Co. v. USF Ins. Co.*, 191 P.3d 866, 873 (Wash. 2008). Accordingly, "breach of the duty to

11   defend cannot occur before tender." *Griffin v. Allstate Ins. Co.*, 29 P.3d 777, 782 (Wash. Ct.

12   App. 2001).

13       In this case, Plaintiff filed her suit against ARAG in December 2016, ARAG filed its

14   answer asserting affirmative defenses on February 17, 2015, and Plaintiff's suit concluded in

15   April 2018. (*See* Dkt. Nos. 18 at 6–7, 19 at 2, 19-3 at 1.) But Plaintiff did not tender the defense

16   of any aspect of her suit to Defendant. In fact, despite being in regular contact with Defendant

17   during the pendency of her disciplinary proceedings, Plaintiff did not inform Defendant of her

18   suit against ARAG until February 14, 2019. (*See* Dkt. Nos. 20 at 6, 21-1 at 177.)[7] As Plaintiff

19

20       [6] In *Weinstein & Riley, P.S. et al. v. Westport Ins. Corp.*, Case No. C08-1694-JLR, Dkt.
     No. 150 (W.D. Wash. 2011), the Honorable James L. Robart, United States District Judge,

21   examined similar language and concluded that it did not require the insurer to defend affirmative
     claims made by the insured. In that case, the policy obligated Westport to defend "CLAIMS first

22   made against any INSURED during the POLICY PERIOD . . . by reason of any WRONGFUL
     ACT . . . ." *Id.* at 34. Judge Robart concluded that the "language is unambiguous. Under the

23   Policy, Westport agreed to defend any claim for loss made *against* Plaintiffs . . . The Policy does
     not include a provision triggering a duty to 'defend' affirmative claims made by the insured." *Id.*

24   at 35.

25       [7] Plaintiff asserts that she did not have to tender to Defendant the defense of her suit
     against ARAG, arguing that the covered claims in both proceedings arose from the same nucleus

26   of operative facts and that she tendered the defense of the WSBA proceedings to Defendant. (*See*
     Dkt. No. 29 at 14) (citing Dkt. No. 19-5). But Plaintiff's WSBA disciplinary proceeding did not

ORDER
C19-1253-JCC
PAGE - 13

did not tender the defense of any aspect of her suit against ARAG to Defendant, Defendant could

not have breached its duty to defend as to that suit. *See Unigard*, 983 P.2d at 1160; *Griffin*, 29

P.3d at 782.[8]

        In response, Plaintiff argues that her suit against ARAG was reasonably related to her

WSBA disciplinary proceedings and thus was reasonably related to a covered claim. (*See* Dkt.

No. 29 at 11–14.) "An insurer may be obligated to pay fees and expenses incurred in a separate

lawsuit if the insured meets its burden to demonstrate that those fees are reasonably related to the

defense of a covered claim." *Weinstein & Riley, P.S.*, Case No. C08-1694-JLR, Dkt. No. 150 at

43. "[L]egal services and expenses are reasonably related to a covered count if they would have

been rendered and incurred by reasonably competent counsel engaged to defend a suit against the

[insured] arising out of the same factual background . . . but which alleged only the matters

complained of in [the covered counts]." *Id.* at 42 (quoting *Continental Cas. Co. v. Bd. of Ed. of

Charles Cty.*, 489 A.2d 536, 544 (Md. 1985)); *see also Bordeaux, Inc. v. Am. Safety Ins. Co.*, 186

P.3d 1188, 1193 (Wash. Ct. App. 2008) (internal quotations omitted) ("No right of allocation

exists for the defense of non-covered claims that are 'reasonably related' to the defense of

covered claims.").

        Here, there was no covered claim to which Plaintiff's suit against ARAG could be

related. As discussed above, the WSBA disciplinary proceedings against Plaintiff did not involve

a covered claim triggering Defendant's duty to defend under the policy. *See supra* Section II.B.1.

While Plaintiff argues that her prior counsel advised her to bring a suit against ARG "as part of

---

involve a claim triggering Defendant's duty to defend. *See supra* Section II.B.1. Thus, even
assuming that Plaintiff properly tendered the defense of the WSBA disciplinary proceedings to
Defendant, that tender could not excuse Plaintiff from tendering the defense of future claims to
Defendant.

    [8] Plaintiff acknowledges that ARAG did not assert a counterclaim against her in her
affirmative suit and therefore does not argue that Defendant had a separate duty to defend any
such counterclaim. (*See* Dkt. No. 29 at 13) ("It was also not a prerequisite that ARAG have filed
a counterclaim in the lawsuit as [Defendant] contends . . . There was no additional requirement
in the Policy that ARAG file a counterclaim").

her overall defense strategy" and to recoup fees ARAG was allegedly withholding, (*see* Dkt. No. 29 at 12–13), this does not somehow convert the WSBA disciplinary proceedings into a covered claim.

In sum, Plaintiff's suit against ARAG did not involve a covered claim triggering Defendant's duty to defend, was not tendered to Defendant, and was not reasonably related to another covered claim. Therefore, Defendant's motion for summary judgment is GRANTED on this ground.

## C.    Applicable Limit of Liability

Defendant moves for a declaratory judgment that its obligation to Plaintiff under the policy is reimbursement of up to $10,000 for defense costs incurred in the WSBA disciplinary proceedings and that such payment became due when Plaintiff provided evidence of the resolution of those proceedings and of her defense costs. (Dkt. No. 20 at 12–15.) Plaintiff moves for summary judgment on the issue that Defendant breached its duty to defend when it applied the $10,000 limit of liability to a claim under the policy and to Plaintiff's request for reimbursement of her attorney fees. (Dkt. No. 18 at 16–19.)

 "In construing the language of an insurance policy, the entire contract must be construed together so as to give force and effect to each clause." *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 511 (Wash. 1990). Thus, interpretation and construction of an insurance policy is a question of law, and the policy will be given a practical and reasonable interpretation that fulfills its object and purpose. *See N. Pac. Ins. Co. v. Christensen*, 17 P.3d 596, 598 (Wash. 2001); *Wash. Pub. Util Dists.' Utils. Sys. v. Pub. Util. Dist. No. 1 of Clallam Cty.*, 771 P.2d 701, 707 (Wash. 1989). Undefined terms in the policy are given their plain, ordinary, and popular meaning. *Int'l Marine Underwriters v. ABCD Marine, LLC*, 313 P.3d 395, 400 (Wash. 2013).

Here, as discussed above, neither Plaintiff's WSBA disciplinary proceedings nor her suit against ARAG involved a covered claim triggering Defendant's duty to defend under the policy. *See supra* Sections II.B.1., II.B.2. Rather, the WSBA disciplinary proceedings fell within the

1    scope of the policy's disciplinary proceedings endorsement. (*See* Dkt. No. 19-5 at 23–24.) Under

2    the endorsement, Defendant was obligated to reimburse Plaintiff for up to $10,000 of defense

3    costs upon the final resolution of disciplinary proceedings that did not result in the suspension or

4    revocation of Plaintiff's license or right to practice law. (*Id.* at 23.)[9] And while Plaintiff's

5    February 14, 2019 letter stated that the WSBA disciplinary proceedings had concluded and set

6    forth her claimed fees and costs, (*see* Dkt. No. 21-1 at 177–78), Plaintiff did not provide

7    Defendant with the WSBA's June 17, 2019 letter of dismissal until November 25, 2019, (*see*

8    Dkt. No. 22 at 1, 6). Thus, the record establishes that the policy obligated Defendant to

9    reimburse Plaintiff up to $10,000 in defense costs incurred during the WSBA disciplinary

10   proceedings and that Plaintiff provided Defendant with evidence of the WSBA's dismissal on

11   November 25, 2019. Therefore, Defendant's motion for summary judgment is GRANTED and

12   Plaintiff's motion for partial summary judgment is DENIED on this ground.

13           **D.      Plaintiff's Remaining Claims**

14           Defendant moves for summary judgment on Plaintiff's claims for bad faith, violation of

15   IFCA, violation of Washington's unfair settlement practices regulations, and violation of the

16   CPA. (Dkt. No. 20 at 20–24.) Plaintiff moves for summary judgment on the issue that Defendant

17   breached its duty to defend in bad faith. (Dkt. No. 18 at 19–21.)

18                   *1.   Bad Faith*

19           To support a claim of bad faith denial of coverage, a plaintiff must establish the insurer's

20

21           [9] Plaintiff's February 14, 2019 letter argued that the terms "costs" and "fees" are different
     under the policy. (*See* Dkt. No. 21-1 at 183–84); *see also Cost*, *Black's Law Dictionary* (11th ed.
22   2019); *Attorney's Fee*, *Black's Law Dictionary* (11th Ed. 2019). In its response to Plaintiff's
     motion for partial summary judgment, Defendant acknowledges Plaintiff's distinguishing
23   between the two terms but states that "each dictionary definition [Plaintiff] cites favors
     [Defendant's] interpretation that 'defense costs' in the Disciplinary Proceedings Endorsement
24   includes the fees attorneys charge for their services when they represent an insured in a
     disciplinary proceeding." (*See* Dkt. No. 27 at 13–14.) Defendant's interpretation would benefit
25   Plaintiff by broadening the scope of the term "defense costs" as used in the endorsement. And
     the parties' possible dispute over the term does not change that Defendant's liability under the
26   endorsement was limited to $10,000.

1   duty, a breach of that duty, and damages proximately caused by the breach. *See Mut. of*

2   *Enumclaw Ins. Co. v. Dan Paulson Const., Inc.*, 169 P.3d 1, 8 (Wash. 2007). "In order to

3   establish bad faith, an insured is required to show the breach was unreasonable, frivolous, or

4   unfounded." *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998). As discussed above,

5   Defendant did not breach any duty to defend or to indemnify Plaintiff under the policy and

6   correctly determined that the policy obligated it to reimburse Plaintiff for up to $10,000 in

7   defense costs incurred in the WSBA disciplinary proceedings. *See supra* Sections II.B.1., II.B.2.,

8   II.C. Therefore, Plaintiff has not identified a breach of a duty necessary to support her claim of

9   bad faith against Defendant. *See Mut. of Enumclaw Ins. Co.*, 169 P.3d at 8. Therefore,

10  Defendant's motion for summary judgment is GRANTED and Plaintiff's motion for summary

11  judgment is DENIED on this ground.

                    2.   *IFCA*

13          IFCA provides that a first-party claimant to an insurance policy "who is unreasonably

14  denied a claim for coverage or payment of benefits by an insurer" may bring an action for

15  damages. Wash. Rev. Code § 48.30.015(1); *see* Wash. Rev. Code § 48.30.015(2)–(3) (providing

16  for treble damages and an award of attorney fees and specified cost). However, "IFCA does not

17  create an independent cause of action for [enumerated] regulatory violations" absent an

18  underlying unreasonable denial of coverage or benefits. *Perez-Crisantos v. State Farm Fire &*

19  *Cas. Co.*, 389 P.3d 476, 483 (Wash. 2017). IFCA requires a first-party claimant to "provide

20  written notice of the basis for the cause of action to the insurer and office of the insurance

21  commissioner" 20 days prior to filing an IFCA action; if the insurer fails to resolve the basis of

22  the action, the claimant may bring their action without further notice. Wash. Rev. Code

23  § 48.30.015(8)(a)–(b).

24          Plaintiff's complaint appears to premise her IFCA claim on Defendant's failure to

25  respond to Plaintiff's IFCA notice. (*See* Dkt. No. 1 at 15–16.) But IFCA's notice provision does

26  not create a cause of action under IFCA. Rather, an insurer's failure to timely respond to an

1   IFCA notice allows a claimant to bring an IFCA action without providing further notice. *See*

2   Wash. Rev. Code § 48.30.015(8)(b). And as discussed above, Defendant did not unreasonably

3   deny Plaintiff coverage or benefits under the policy. *See supra* Sections II.B.1., II.B.2., II.C.

4   Therefore, Defendant's motion for summary judgment is GRANTED on this ground.

5                      *3.   CPA*

6           To prevail under the CPA, a plaintiff must establish each of the following elements: "(1)

7   unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact;

8   (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training*

9   *Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533–35 (Wash. 1986); Wash. Rev. Code

10  § 19.86.060. "Violations of WAC 284-30-330 are per se violations of [the CPA]." *Truck Ins.*

11  *Exch. v. Vanport Homes, Inc.*, 58 P.3d 276, 284 (Wash. 2002) (citing *Leingang v. Pierce Cty.*

12  *Med. Bureau, Inc.*, 930 P.2d 288, 297 (Wash. 1997)). Similarly, an insurer's "bad faith

13  constitutes a per se violation of the CPA." *Ledcor Indus. (USA), Inc. v. Mut. of Enumclaw Ins.*

14  *Co.*, 206 P.3d 1255, 1262 (Wash. Ct. App. 2009).

15          In her complaint, Plaintiff alleged that Defendant "violated WAC 284-30, *et seq.*" and

16  "also committed *non-per se* violations of the" CPA. (Dkt. No. 1 at 15.) But the record shows that

17  Defendant accurately represented the nature of the applicable policy provisions to Plaintiff and

18  promptly notified Plaintiff of both its coverage determinations and the underlying rationales for

19  those determinations. *See* Wash. Admin. Code § 284-30-330(1), (13); Wash. Admin. Code

20  § 284-30-350; *Truck Ins. Exch.*, 58 P.3d at 284; (Dkt. No. 29 at 16). And as discussed above,

21  Defendant did not unreasonably deny Plaintiff coverage or benefits under the policy and thus did

22  not act in bad faith. *See supra* Sections II.B.1., II.B.2., II.C.; *Ledcor Indus. (USA), Inc.*, 206 P.3d

23  at 1262. Therefore, Defendant's motion for summary judgment is GRANTED on this ground.

24  **III.    CONCLUSION**

25          For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 20) is

26  GRANTED and Plaintiff's motion for partial summary judgment (Dkt. No. 18) is DENIED.

1     Plaintiff's claims against Defendant are DISMISSED with prejudice.

2         DATED this 7th day of July 2020.

3

4

5

6                           John C. Coughenour
                           UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26